# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KIEWIT/MANSON JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. 06-796 C<br>(Judge Horn) |

## DEFENDANT'S STATEMENT OF ISSUES OF FACT AND LAW

Pursuant to the Court's March 10, 2008 and May 9, 2008 orders, defendant respectfully submits this statement of issues of fact and law.[1]

## STATEMENT OF ISSUES OF FACT

Dredging Claim

1. Whether KM encountered reasonably foreseeable conditions at Nome Harbor.
2. Whether KM did not incur damages given the contract documents provided to it, including the contract terms, specification, excavation pit logs, photographs, and a description of the character of materials to be encountered.

[1] The Government submits this statement pursuant to paragraph (c) of the Court's March 10, 2008 Order modifying Appendix A. Upon receipt of plaintiff Kiewit Manson JV ("KM")'s draft of proposed filings at approximately 3:30pm EST May 14, we discovered that it did not include a draft of the joint statement of issues of fact and law specified in paragraph (c) of the Court's Order. When contacted to discuss drafting a joint statement in accordance with the Court's order, counsel informed us that we should do what we had to do. We have since 3:30pm EST May 14 prepared this document, and shortly before filing, transmitted a draft to plaintiff's counsel. We have not received plaintiff's counsel's authorization to make this a joint filing. Accordingly, In light of the noon EST deadline for this filing, we have filed it as defendant's statement of issues of fact and law.

3. Whether KM did not encounter conditions that differed materially from those indicated by the contract.

4. Whether the fact that KM completed the dredging project sooner than its proposal anticipated proves that KM's performance was not affected adversely and materially by the conditions that it encountered.

6. Whether daily dredge reports prepared by KM, which show that the hydraulic dredge Bechtolt encountered rock, sand, cobbles, metal debris, boulders, stones, gravel, glacial till, and debris from harbor and mining operations throughout the project area, confirm that the character of materials encountered were consistent with the character of materials described in Specification 02222A and the boring samples provided in the contract.

7. Whether the language in paragraph 1.3 of Specification 02222A which states that the "[character of materials data do not necessarily represent the project area materials to be encountered throughout the entire project area" placed KM on notice that it could not rely solely upon the boring information provided.

8. Whether KM's failure to consider all of the geotechnical data available to it, including excavation pits dug 400 meters to the west of the causeway, was reasonable.

9. Whether prior to commencing dredging KM failed to consider a copy of a January 2004 Geotechnical Report prepared by the COE.

10. Whether KM failed to consider in it proposal that it was to perform new dredging as opposed to maintenance dredging at Nome Harbor.

11. Whether KM's measured mile methodology for calculating damages is unsupportable because KM sought to compare dredging productivity between the East Sediment Trap and other dredging areas that were completely different in terms of subsurface conditions and man made obstructions.

12. Whether KM failed to prove that it incurred extra cost when its total effective dredge time was within the range expected by COE regulations for dredging new area.

Quantities Overrun Claim

a. Seawall

1. Whether KM can claim that it could remove the seawall as part of the peel back contract line item when it contends that the seawall is not part of the causeway rock as identified in Bid Item #8.

b. Main Breakwater Transition

2. Whether KM modified its contract proposal to construct the main breakwater submitted on September 9, 2003 without the COE's agreement, so that KM could place A22 rock, rock with a unit price of $308.00 per cy, at greater levels than proposed by KM and accepted by the COE.

3. Whether KM's claim that its own proposal to construct the main breakwater transition was "unconstructable" is supportable when A22 comes in different sizes and volumes and KM could have used flatter A22 rock pieces to build the transition as proposed.

c. Cupping at the Seaward Side of the Spur Tie-in

4. Whether KM failed to comply with the COE's response to Request for Information #1, when KM increased the thickness of A22 without informing the COE.

d. Peel Back and Salvage

5. Whether KM, which did not include the peel back rock in its estimate for the quantity of A22 rock (Bid Item 6), should be compensated at the unit price ($308.00 per cy) for A22 rock for removing that rock from the peel back of the causeway (Bid Item 8) and replacing the same A22 and B22 rock from the causeway.

6. Whether KM misled the COE when it sent a pre-bid email to the contracting officer informing the COE that its estimate of the "quantities for A22, B22, and A10 are greater than the USACE by more than 10%," in light of the fact that the day before, Kiewit had estimate the quantities to exceed the COE's estimate by 46% for A22; 50% for B22 and 437% for A10.

E. Winter Over

7. Whether KM performed work for other Kiewit projects near Nome and benefitted from keeping its equipment at Nome during the 2004-05 winter.

8. Whether the "other reasons" for not demobilizing equipment, as described by Kiewit's John Brauchle contributed to the decision to winter over.

## STATEMENT OF ISSUES OF LAW

1. Whether the work that KM performed with respect to the project construction which was required to be performed for the scheduled prices in its contract caused it to incur additional costs, and if so, to what extent KM is entitled to compensation that it claims.

   A. Whether KM's proposal that was accepted for the project contract was premised upon estimates and schedules that are consistent with its claims.

   B. Whether KM is entitled to recover upon its claims for equitable adjustment for alleged changes, defective specifications, and variations in estimated quantities, and for breach of alleged warranties of "the plans and specifications" and "administration of the project." See First Amended Complaint (Compl.) at ¶ 14 ("First Cause of Action").

      1. Whether KM's claims are consistent with a reasonable contractor's interpretation of the contract documents.

      2. Whether KM's claims of entitlement and damages are consistent with its proposal upon which the contract was awarded.

   C. If KM experienced any potentially compensable events, to what extent were such events caused by or otherwise the sole responsibility of the Government.

   D. If KM is entitled to recover any sums, what amount is due.

2. Whether the work that KM performed with respect to the project dredging which

was required to be performed for the scheduled prices in its contract caused it to incur additional costs, and if so, to what extent KM is entitled to compensation that it claims.

A. Whether KM's bid that was accepted for the project contract award was premised upon estimates and schedules that are consistent with its claims.

B. Whether KM is entitled to recover upon its claims for an alleged differing site condition or breach of contract. Compl. ¶ 15 ("Second Cause of Action").

1. Whether KM's claim is consistent with the contract documents read as a whole, and is reasonable.

2. Whether a reasonable contractor should have relied upon the test boring data concerning soil conditions at and around the dredging prism as an indication of the soil conditions that would be encountered.

3. Whether the boring information, exploration logs, photographs, and specifications, and historical site information made available to KM during bidding made the conditions KM encountered reasonably foreseeable.

4. Whether KM performed an appropriate pre-bid site investigation or analysis.

5. Whether KM, as an experienced dredging contractor, should have recognized that subsurface conditions could be

different than those indicated in the contract boring logs.

6. If KM establishes a differing site condition, whether KM met its burden of segregating the days of alleged delay which are solely attributable to the alleged differing site condition.

8. Whether KM met its burden of proof that it suffered compensable damages as a result of the site conditions encountered, in the amount claimed.

9. Whether the measured mile analysis utilized by KM failed to demonstrate any damages.

C. If KM experienced any potentially compensable events, to what extent were such events caused by or otherwise the sole responsibility of the Government.

D. If KM is entitled to recover any sums, what amount is due.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ David M. Hibey
DAVID M. HIBEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0163
Fax: (202) 514-8624

May 15, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of May 2008, a copy of the foregoing "DEFENDANT'S STATEMENT OF ISSUES OF FACT AND LAW" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brian A. Mizoguchi