IIN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KIEWIT/MANSON JV,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-796 C<br><br>MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION IN *LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GREGORY L. HARTMAN AND TO STRIKE HIS EXPERT REPORT |

BACKGROUND FACTS

The deadline for serving expert reports in this case was April 11, 2008. Although not a specific part of the Court's Scheduling Order, this date was established by express agreement among counsel for the parties. It was recognized that the deadline date was critical because settings for the expert depositions already had been agreed. Mr. Gregory L. Hartman's deposition was set for April 29, 2008. The Court's discovery cutoff was fixed as April 25, 2008 in the Scheduling Order dated March 10, 2008. Counsel had acknowledged to one another that it was essential for the expert reports to be in the opposing party's hands at least a week in advance of the scheduled depositions.

The critical need for the expert reports a week or more in advance of the agreed deposition dates was especially acute with respect to Mr. Hartman. Defendant had been advised that Mike Hartley, Plaintiff's expert on the subject area to be addressed by Mr. Hartman, was leaving on a three-week assignment to Attu Island in the remote reaches of the Aleutian Chain, and for all practical purposes would be *incommunicado*. Mike Hartley's

deposition was set for Monday the 28th, since he had to depart for this trip on an early flight Tuesday, April 29th.

The government emailed Mr. Hartman's report to Plaintiff on April 15th. A copy of this Report, as it was received, is attached as Exhibit A to the Affidavit of Counsel. It will be seen to consist of a narrative rendition, eight unnumbered pages in length, containing several opinions proffered by Mr. Hartman. These opinions describe his version of how the geotechnical data in the contract documents should have been interpreted and considered by bidders in formulating their bids for the dredging portion of the Nome Project.

The Report consisted of nothing more than this narrative. There was no *curriculum vitae* or other explanation of Mr. Hartman's qualifications, and no indication of how he was being compensated by the goverment. Neither was the Report accompanied by a list of all cases in which Mr. Hartman had testified at trial or by deposition over the last four years. Although the Report includes a cursory statement of "Data Reviewed" (consisting of the dredging claim document, including attachments and enclosed correspondence which were part of the claim, the Contracting Officer's Decision, and the Daily Dredge Logs), there was nothing further to describe the data or other information considered by Mr. Hartman in forming his opinion. Nor did the Report include any exhibits Mr. Hartman proposed to use by way of summarizing or supporting his opinion.

Mr. Hartman's deposition did occur, as scheduled, on the afternoon of Tuesday, April 29th in the offices of Plaintiff's counsel in Seattle, Washington, spilling over into Wednesday morning. The only things he brought to the deposition were four generally available publications dealing with dredging. Then, on Wednesday morning, he brought with him a slim folder which did not even include the documents he had reviewed for purposes of

arriving at his opinion and preparing his Report. Mr. Hartman testified: "I think my assistant has it" (Dep. p. 24). There was no opportunity for us to evaluate the few materials which were in Mr. Hartman's folder. Defendant well knowing that by then our expert was unavailable to provide any analytic assistance.

In the course of his deposition, Mr. Hartman testified that he had given deposition testimony numerous times as an expert witness (pp. 24; 39:11). He has previously testified in the Court of Federal Claims five times (p. 39). Notwithstanding this background, Mr. Hartman's stated that he was unaware of the Rule requirements pertaining to expert reports (p. 33), hence was not aware of the requirements for providing, as part of his report, his *curriculum vitae*, the publications he has authored (he stated at his deposition that he had authored "30-plus" publications), his prior testimonial experience, or the data and information relied upon in framing his opinions (pp. 33-34).

The deficiencies may be due partly to the fact that Mr. Hartman did not begin work on this assignment, and presumably was not brought on board by the government as an expert in this case, until a couple of weeks before the expert report was due ("I started work around April 1, or the end of last month" (p. 19)) the deposition taking place on April 29th, and the due date for the report having been April 11th). Mr. Hartman acknowledged that the government lawyers had not asked him to bring any documents with him to the deposition (p. 24). When the deposition adjourned, at 4:56 p.m. that afternoon, government counsel handed a copy of the Gregory L. Hartman *curriculum vitae* to counsel for Plaintiffs (p. 79). It was acknowledged by Mr. Hartman that there was no reason why this *curriculum vitae* document could not have been attached to his Report (p. 24).

The difficulty of conducting an effective examination of Mr. Hartman is well illustrated

by the non-production of two documents cited in his Report as the basis for his opinions. On the second page of his Report, Mr. Hartman asserts that "(T)he Corps of Engineers uses a rating based descriptor system, the Unified Soil Classification System (USCS)". This is used to support his conclusion regarding what the government data in the bid documents should be understood to mean.

On the next to last page of the Report, Mr. Hartman states "(T)he Corps Engineering Regulations' identify that the effective and acceptable time for actual dredging should be from 60% to 80% of the total working time". This is used to support his opinion that Plaintiffs' "effective time actually dredging" was not unusually low. Plaintiff absolutely rejects this opinion, and it thus needed to be tested against the purported source document.

Neither of these documents was attached to Mr. Hartman's Report (p. 30). Neither of them was produced at the deposition. There was absolutely no opportunity to examine Mr. Hartman regarding the conclusions derived from these documents, although at the conclusion of the deposition government counsel's closing comment was as follows:

> We understand that you all have had some problems locating the ER regulation that was cited in the report, and we are going to provide you with that as soon as possible.

We still have not seen the missing Regulation upon which Mr. Hartman's Report relies, and it is well beyond the time when Plaintiffs would be able to make effective use of this document in any event.

ARGUMENT AND AUTHORITIES

RCFC 26(a)(2)(B) states that the written expert witness report shall include:

1. A complete statement of all opinions to be expressed and the basis and reasons therefor;

2. The data or other information considered by the witness in forming the opinions;

3. Any exhibits to be used as a summary or support for the opinions;

4. The qualification of the witness, including a list of all publications authored by the witness within the preceding 10 years;

5. The compensation to be paid for the study and testimony; and

6. A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Defendant cannot dispute that Mr. Hartman failed to comply with the requirements set forth in Items 3, 4, 5, and 6 of the Rule; and that he neither included nor made available at deposition the materials required by Item 2 of the Rule.

This Motion *in Limine* raises the question as to whether the Court should enforce RCFC 26(a)(2)(B) by excluding the evidence at trial in accordance with the provisions of Rule 37(c)(1), which stipulates:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. . .

Plaintiff submits that there is no substantial justification for Defendant's noncompliance with the Rule; that it has been prejudiced by Defendants' noncompliance; and that exclusion of Mr. Hartman's testimony and Report is warranted and will not impose any unjustifiable hardship upon Defendant in the presentation of its case.

**1. Rule 26(a) should be taken seriously, and the procedures established by**

**Rule 37(c)(1) are self-executing**. The Court's Opinion in *Rivera Pomales v. Bridgestone Firestone, Inc.*, 217 F.R.D. 290 (D. Puerto Rico 2003) provides an instructive backdrop for the issue at hand. There the defendant's noncompliance consisted solely of failure to include a copy of the proffered expert's *curriculum vitae* as part of his Report. Plaintiffs moved to exclude the expert testimony on that ground. Defendant argued that the failure was a harmless error, and that Plaintiff could have and should have requested the expert's *curriculum vitae* from Defendant. Following is an extract from the Court's Order striking the expert's testimony on the ground of noncompliance with Rule 26(a). (It should be noted that the Court had issued an Initial Scheduling Conference Call which, among other pretrial procedures, dealt with expert witness disclosures in language that essentially mirrored Rule 26(a)(2)(b)):

> The Court finds that it is substantially important for an opposing party to be given the *curriculum vitae* of the opposition's expert witness. This is so for a number of reasons. First, the facts pertaining to the expert's educational background are essential (e.g. to study the worth of the expert; the opportunity to revise through investigation the truth of such alleged facts; the worth of the University where the expert studied; the research conducted in the University pertaining to the subject in which the expert intends to speak; for discovery of professors at the University, and possible contrary statements by those professors). Second, the importance of knowing the expert's *experience* in this field (e.g. the companies and business the expert has worked with; the bias of these business pertaining to this particular subject matter; whether such associations are for or against the stand taken by the industry or by consumer groups). This would trigger even further investigation by the opposing party and the possibility of disclosure of material, which would bear upon the qualification of the expert. Third, what associations or universities the expert belongs to; the studies published and unpublished by the expert; the journals, thesis, and books which would speak upon the subject matter of the report, and upon cross ***293** examination, would disclose other opinions given by the proposed expert. Finally, the expert's previous expert testimony given in Court, as this may disclose the bias of the expert or the kind of association he has with the industry economically.

[1]Federal Rule of Civil Procedure 37(c)(1) deals with Failure to Disclose; False or Misleading Disclosure; Refusal to Admit and states in pertinent portion as follows:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions...

Fed.R.Civ.P. 37(c)(1). In reaction to this Rule, Defendant argues that Plaintiff merely needed to request a copy of Dr. Wiechel's curriculum vitae upon discovery that it was not included with the expert report. However, the Court finds that Plaintiff did not have a duty to further request the curriculum vitae, especially after it was specifically ordered by the Court. "The sanction is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure, as authorized by Rule 37(a)(2)(A) in order to compel a further disclosure, as a predicate for imposition of the sanction of exclusion." *Wright, Miller & Marcus,*8A Federal Practice and Procedure: Civil 2d § 2289.1.

This does not mean that Defendant is without remedy. The Court must now determine whether Defendant's reason for failing to include Dr. Wiechel's curriculum vitae was "substantially justified" and whether such failure to include should be considered "harmless" by the Court. The First Circuit has held that under "Rule 37(c), the district court's latitude is wide." *Ortiz-López v. Sociedad Española de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001) (citing *Poulin v. Greer,* 18 F.3d 979, 984 (1st Cir.1994)).

The Court does not believe that Defendant's failure to disclose was harmless. Certainly, the fact that disclosure of a *curriculum vitae* has been included as one of the pivotal rules of pretrial discovery and procedure identifies it as an essential disclosure to an opposing party for its ability to study the value of the experts scientific testimony. The failure to disclose has deprived Plaintiffs of a fair opportunity to show their own expert a copy of the *curriculum vitae* and discuss it with him and for use in preparation of their expert, pretrial motions, interrogatories and depositions, and investigation through other sources, as well as general preparation for trial. The fact that Plaintiffs have chosen not to

> depose Defendant's expert witness does not eliminate the fact that Plaintiffs were deprived of the opportunity to utilize this information in preparation for trial, as described above.
>
> This is particularly important in the scenario of the Rules of Civil Procedure pertaining to expert testimony where ultimately, if admitted by the Court, the instruction to the jury would be that such expert has specialized knowledge and study of the subject matter and that the jury must give appropriate weight to his opinion. It is for this reason that the Court finds that Defendant was not substantially justified in its omission. The importance of this trial is great. The Court recognizes the precedential value of such a case in the tire industry. The Court must be very selective in its analysis and must be even handed in its application of the law. Ultimately, this Court takes the Rules of Civil Procedure very seriously and finds that a liberal application of their mandates could be the first step upon a perilous path. This Court chooses to stay the course and follow the letter of the law. For this reason, the Court hereby **STRIKES** Dr. Wiechel's expert testimony for Defendant's failure to include a copy of Dr. Wiechel's *curriculum vitae* with his report in clear violation of this Court's Orders and Rule 26(a) of the Federal Rules of Civil Procedure

We submit that this Court similarly should stay the course and follow the letter of the law. There are significantly more reasons here, and they are far stronger reasons, than the *Rivera v. Pomales* court had before it when it struck defendant's expert testimony in that case.

**2.**

**There is no substantial justification for Defendant's noncompliance with Rule 26(a) and Plaintiff has been harmed and is prejudiced.**

These are not "harmless" nondisclosures. The real prejudice to Plaintiffs caused by Defendant's noncompliance with the Rules consist of two uncurable consequences. First, we were unable to fully and fairly examine Mr. Hartman at his deposition due to absence of these key components of his Report, and due also to the fact that we could

not utilize our own expert to assist in preparation for deposition. Defendant knew that Mike Hartley was going to be unavailable at the Hartman deposition, and thus only could assist by advice and counsel *prior* to the Hartman deposition based upon his review and analysis of the date which was provided as a part of the Hartman Expert Report. Second, because no available time remained before the May 27, 2008 trial date within which the defect could be cured.

The decision in *Pell v E.I. DuPont De Nemours & Coe., Inc.,* 231 F.R.D. 186 (D. Del. 2005) is pertinent. The Court dealt with a comparable nondisclosure. The ruling is encapsulated in these two paragraphs from the Opinion (at p. 9):

> I agree that the Report fails to even come close to satisfying the requirements for expert reports under Federal Rule of Civil Procedure 26(a)(2)(B). Specifically, the Report does not contain Dr. Tannian's qualifications to give expert testimony, namely an identification of his employment history, or identification of publications, or a listing of other cases in which he has testified, or an indication of his compensation from Plaintiffs.
>
> * * *
>
> Moreover, Dr. Tannian's proposed testimony and Report fail to satisfy the *Daubert* standards for the admissibility of expert testimony. Without including Dr. Tannian's qualifications, there is no way for me to determine whether he is qualified to render the expert opinions he has proposed in the Report.

The court then proceeded to afford the Plaintiff an opportunity to cure the deficiencies, but did to on very strict terms:

> If Plaintiffs choose to remedy the deficiencies of Dr. Tannian's report, DuPont will have another opportunity to depose Dr. Tannian to determine whether his report satisfies the requirements of Rule 26(a)(2)(B) and whether his testimony satisfies the standards enunciated in *Daubert.* The reasonable expenses incurred by DuPont as a result of Plaintiff's failures under Rule 26(a)(2)(B) will be paid by Plaintiffs, including DuPont attorney

> time spent in preparation for, and deposition of, Dr. Tannian, and time to make a subsequent motion to strike and preclude, should Plaintiffs be unable to remedy the deficiencies noted above. *See* Tarlton v. Cumberland County Correctional Facility, 192 F.R.D. 165, 169 (D.N.J.2000) (noting the self-executing nature of Rule 37(c)(1), i.e., there is no need for a litigant to make a motion to invoke the possible sanctions of the Rule).

There is no imaginable way Defendant can explain away the complete failure to comply with Rule 26(a). And for Defendant to argue that the noncompliance is "harmless" would be tantamount to asserting that five of the six express requirements have no purpose being part of the Rule. Harm is manifest. Harm occurs because those requirements do have a purpose, and that purpose was thwarted here.

In *Bethel v. United States*, 2007 WL 1732791 (D.Colo.), Defendant argued that failure to include, as part of its proffered expert report, the expert's compensation and his testimonial history (Items 5 and 6 of the Rule's requirements) was "harmless". Even though Plaintiff had twice taken the deposition of this expert, and even though one of the depositions "was devoted almost entirely to obtaining testimony" regarding compensation, the court rejected the notion that such noncompliance therefore was harmless:

> . . . (T)he disclosure requirement was not imposed for the sole purpose of learning how much money an expert earned from testifying. It was also imposed so that opposing counsel could learn the substance of the testimony which the expert gave in other cases, including the specific opinions he has given on matters which may be substantially similar to the opinions he proposes to render in the case at hand. If he has rendered different opinions of substantially similar diagnoses, that fact could be effective ammunition for cross-examination. In addition, reading the cross-examination by other lawyers can provide counsel with avenues of questioning in the case at hand, avenues which counsel may not have thought of had he not had the benefit of the prior testimony.

The court went on to observe that:

> . . . (I)f an expert in his report provided a partial list of a significant number of cases (together with the necessary identifying data, in which he had testified, the Court might be inclined to find the failure to provide a complete list as 'harmless' on the theory that the opposing counsel was given a fair opportunity to obtain a substantial amount of former testimony. But that is not the case--what Dr. Kennedy provided was inadequate for opposing counsel. . .

Also rejected was the notion that Defendant's failure to provide testimonial history was harmless. There, as here, however, the degree of compliance was inadequate. Indeed, here there is no compliance whatever. It is not as though opaque and incomplete information had been provided, as was the case in *Behtel*. Defendant here did not even make a pretense of compliance.

In *Nguyen v. IBP, Inc.* 162 F.R.D. 675 (D.Kan 1995), the court dealt with the report of an expert witness proffered by Plaintiff. Looking into the elements of "substantial justification" and "harmlessness" the court began by fixing the burden of proof:

> The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure.

Counsel for plaintiff Nguyen attempted to shift the responsibility for noncompliance to the expert, an avoidance which the court flatly rejected.

> A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26. The adverse party should not be placed at a disadvantage of be deprived of the benefits of Rule 26 by the selection of an expert who cannot or will not make the required disclosures. The selection and retention of an expert witness is within the control of the party employing the expert. To the extent that there is a disadvantage created by the expert's failure to disclose it must be born by the party retaining the expert witness.

Nguyen attempted to invoke "harmlessness" as an avoidance of the Rule, but again was brought up short by the court:

> Plaintiff argues that any 'minor' disclosure omission is harmless. The characterization of the failure to comply with Rule 26(a)(2)(B) as a minor omission demonstrates plaintiff's lack of appreciation for the clear requirements of the Rule. The 1993 Amendments to the Federal Rules of Civil Procedure which instituted the disclosure requirement were an attempt to assure that all parties disclose certain information concerning their expert witnesses, including certain background facts which would enable a party to prepare for cross-examination at deposition or trial.

To reiterate: The requirements of the Rule are not to be dispensed with as needless surplusage. In situations such as this one, where the noncompliance is as flagrant and pervasive as the facts show Mr. Hartman's Report to be, prejudice and harm are virtually *per se* extant. We were literally blocked and prevented from conducting even a semblance of effective investigation, preparation and examination with respect to Mr. Hartman's opinions.

**3.**

**Exclusion is warranted, and will work no unjustifiable hardship on Defendant.**

The *Pell v. DuPont* Court made the observation that an especially hard look must be taken at the sanction of exclusion if the result is to expose the losing party to summary or directed judgment:

> When the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment, the Court of Appeals will give those rulings a 'hard look' to determine if the district court has abused its discretion in excluding evidence as unreliable. Citing *See* *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994)

No such prejudice will result in this case. A loss of Mr. Hartman as an expert does not

expose Defendant's case to summary adjudication on the Dredging Claim. Defendant is left with its factual defense which, in the final analysis, either will not carry the day on that portion of Defendant's case in any event. The Contracting Officer's Decision articulates these defenses, and the government Witness List includes Corps of Engineer personnel whose proposed testimony will set forth the government's defense case – a case which, until just over a month ago when Mr. Hartman was hired as an expert witness, presumably was deemed by the government to be sufficient without his help.

There is one further point to be made, and an additional authority which should be noted. The point is this: In a majority of the decisions we reviewed, the offending party had attempted to comply with all or virtually all of the six expert report components that the Rule requires. As a result, the court looked more closely at the "substantial justification" and "harmlessness" considerations that attend application of Rule 37(c)(1). In this case, the noncompliance is manifest and complete. That distinction suggests, and we submit, that the Court should view more skeptically any "substantial justification" or "harmlessness" argument Defendant may attempt to raise; and it further suggests, we submit, that Defendant's burden of proving substantial justification and harmlessness should be a weighty, if not insurmountable, one.

The case is *Banks v. United States,* a decision of the Court of Federal Claims handed down February 12, 2007 (75 Fed. Claims CL 294). Judge Hewitt therein reviews the three lines of precedent from the Circuit Courts of Appeals, and from them extracts a four factor test: The first factor (for determining whether or not a failure to disclose required information is harmless) "requires an inquiry into the prejudice to or surprise of

the party against whom the evidence would have been admitted". In the present case these factors are real, and are well nigh unarguable.

The second factor ". . . examines the ability of the party at fault to cure any prejudice caused by its actions or inactions". Herein lies a key point of distinction between the present case and a majority of cases in which the courts are called upon to deal with this issue. The typical case is one, such as *Nguyen*, wherein there is time for the party at fault to cure; and, as in *Pell* though not in *Rivera Pomales*, the party at fault is permitted that opportunity, usually accompanied by money sanctions that pick up the attendant costs which the cure will occasion for the party not at fault. In our case, there is no such opportunity. Trial is set to commence in less than two weeks. Knowing how short the time was, and the Court having made abundantly clear its intent to hold that trial date – in such a scenario the government should have taken care to heed the Rules.

Judge Hewitt's third factor ". . . explores the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court". At first blush, one wonders what sort of discovery defalcation could "disrupt the orderly and efficient trial of the case". When the bulb lights, however, one realizes this is just such a case. The trial date cannot be held if the government is allowed to "cure". Correspondingly, Plaintiff has been harmed and prejudiced because the government cannot be allowed an opportunity to cure without "disrupting the orderly and efficient trial of the case".

Finally, the fourth factor "looks at a party's bad faith or willfulness in failing to comply with a discovery obligation". We do not mean to suggest or imply bad faith. But, as suggested, the parties needed to walk a narrow line because of the shortness of time

before trial, and because the Court had made clear its intention that the trial would start on May 27th. The *Bethel* court observed that "self-induced inability to comply with the Rule is not justified" *Id.* citing *Norris v. Murphy*, 2003 WL 21488640 at 3 "Willful" translates as "voluntary" or "volitional" in this context, and the government should be caused to suffer the consequences of its failure, especially at such a critical time, to abide the clear and easily understandable strictures of RCFC 26(a)(2)(B).

Respectfully submitted this 15th of May, 2008.

s/Herbert A. Viergutz
Herbert A. Viergutz
Attorney for Kiewit/Mason JV
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: 907-276-8010
Fax: 907-276-5334

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on May 15th, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Herbert A. Viergutz
Herbert A. Viergutz

**1IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| KIEWIT/MANSON JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 06-796 C<br><br>DECLARATION OF HERBERT A. VIERGUTZ IN SUPPORT OF MOTION IN *LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GREGORY L. HARTMAN AND TO STRIKE HIS EXPERT REPORT |

I, Herbert A. Viergutz, do hereby state and declare as follows: I am over the age of 18 and have personal knowledge of the following facts, and am competent to testify thereto.

1. I have reviewed the facts set forth in Plaintiff's Memorandum of Authorities in Support of the Motion to Exclude Expert Testimony of Gregory L. Hartman and to Strike his Expert Report. This reference is to the agreements regarding serving Expert Reports (p. 1, ¶1); the critical need for timely receipt of Mr. Hartman's Report because of Mike Hartley's departure for Attu (p. 1, ¶2); receipt and content of the Hartman Report (p. 2, ¶¶1, 2); and the circumstances of Mr. Hartley's expert deposition (p. 2, final paragraph; p.3, ¶1). I have first-hand knowledge of the facts as therein stated, and can attest they are true and accurately stated to the best of my knowledge and belief.

I declare under penalty of perjury of the laws of the state of Alaska the foregoing is true and correct.

DATED this 15th day of May, 2008.

s/Herbert A. Viergutz
Herbert A. Viergutz
Attorney for Kiewit/Mason JV
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: 907-276-8010
Fax: 907-276-5334

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on May 15th, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Herbert A. Viergutz
Herbert A. Viergutz