IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KIEWIT/MANSON JV,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-796 C<br><br>**PLAINTIFF'S STATEMENT OF DISPUTED ISSUES OF FACT AND LAW** |

Pursuant to the Court's Orders dated March 10 and May 9, 2008, and the oral Order issued in the course of the May 16th, 2008 Pre-trial Conference, the Plaintiff herein submits herewith its Statement of Disputed Issues of Fact and Law.

**A. Disputed Issues of Fact Respecting the Quantities Claim.**

1. What quantities of rock did KM estimate would have to be mined; what quantities of rock did KM figure would be salvaged from the Peel back operation; whether KM complied with the Salvage Material Provision of the contract (01016 Section1.6.1 "the value of such salvage material shall be reflected in the contract price") in preparing its estimate and submitting its Proposal for the Nome Project?

2. What was the intent of the Corps representative who designed the project, and who chose the wording for the rock construction and causeway rock removal Bid Items (CLINs) and the wording of the Notes on the contract drawings, including Plan Sheets H-1 to H-6; and, was KM's understanding of these contract provisions consistent with the designer's intended meaning of those words?

3. Whether Defendant had documentation to substantiate CLINs 0006 A22 rock, 0013 B22 rock, 0010 A10 rock and the other cubic yard Rock Items which carried estimated quantities in the Proposal Schedule section of the bid documents; and whether bidders were detrimentally misled by the bid documents containing substantially understated quantity estimates for the rock items?

4. Whether Defendant developed an Independent Government Estimate for the project that evaluated the bid information in the contract documents and ran estimates for the cost of the work the same as if Defendant's estimators were standing in the shoes of a bidder?

5. Did Defendant's representatives timely and sufficiently respond to pre-bid communications from bidders regarding rock quantities and payment under rock CLINs for rock removed from the causeway that was to be reused; and did the shortage of funds for construction of the Project influence Defendant's responsiveness?

6. Did Defendant's Source Selection Evaluation Board, through its process of careful review and analysis, its subsequent approval acceptance and incorporation of KM's Technical Proposal into the prime contract, there by tacitly agree on Defendant's behalf with the planned means and methods that formed the basis for the KM Proposal?

7. Whether KM's understanding of the rock placement and rock removal CLINs is reasonable?

8. Whether Defendant's understanding of the rock placement and rock removal CLINs is reasonable?

9. Whether the design set forth in Defendant's bid documents was constructible; or whether it only became constructible by virtue of the changes and modifications that were issued and implemented during the work?

10. Whether the contemporaneous conduct of party representatives during the 2004 construction season is indicative of their reasonable understanding regarding construction of the spur breakwater and the main breakwater transition, and regarding the payment to which KM was entitled on account of that work?

11. Whether or not KM's rock placement on the spur breakwater was reasonably in accordance with the contract documents and RFI #1; and whether the amount of payment KM seeks for that work exceeds the amount it is entitled to be paid, and if so, by how much?

12. Whether the means and methods KM intended to use constructing the main breakwater transition was made known to Defendant's representatives before the work was performed; whether Defendant's representatives timely directed that the work should be done by different means and methods; and whether there is any evidence from which a conclusion can be drawn that KM should be paid some lesser amount than is claimed for this work?

13. Whether a basis exists for treating the seawall rock removal from the causeway nose, and the causeway construction, differently than peel back removal of rock in the causeway nose and construction of the spur breakwater in the causeway nose cavity that resulted from the peel back removal operation?

14. Whether KM calculations of the rock quantities within the pay limits, as defined by a contractually required independent surveyor, is sufficiently complete and accurate to

be used as a basis for determining contract pay quantities consistent with a reasonable understanding of the contract documents?

15. Whether Defendant has presented a calculation that is sufficiently complete and accurate to be used as a basis for determining contract pay quantities consistent with a reasonable understanding of the contract documents?

16. Whether the DCAA audit authenticates a higher unit price for rock quantities installed by KM that exceed 115% of the Defendant's originally estimated quantities?

**B. <u>Disputed Issues of Fact Respecting the Dredging Claim.</u>**

17. Whether KM reasonably considered the geotechnical information in the bid documents in formulating its estimate and the Proposal for the Nome Project?

18. Whether the conditions encountered by KM during its dredging operation in Nome Harbor differed materially from those shown and indicated in Defendant's bid documents?

19. Whether the geotechnical data included by Defendant in the bid documents was sufficient information to reasonably describe the conditions to be encountered in the area to be dredged; or whether Defendant should have done additional geotechnical testing and/or should have performed some form of test dredging within the footprint of the area to be dredged?

20. Whether the geotechnical information contained in the bid documents was accurately presented; and if not, whether KM was misled thereby to its detriment?

21. Whether the three documents that were not included as part of the bid documents, and were not disclosed to bidders by addendum to the bid documents,

contained information which foreseeably may have influenced the bidders' evaluation of dredging conditions to be encountered within the footprint of the area to be dredged?

22. Whether the completion of the required dredging in a shorter duration than the time allowed by the contract establishes that the difficulty of dredging materials actually encountered by KM did not impact its dredging operation?

23. Whether KM planned and scheduled a shorter duration for its dredging operation than was shown in its original proposal to Defendant?

24. Whether KM's method of calculating the productivity loss for the Bechtolt provides a reasonable basis for calculating the compensable cost overrun attributable to the differing site condition?

25. Whether KM's method of calculating the productivity loss for the Viking provides a reasonable basis for calculating the compensable cost overrun attributable to the differing site condition?

26. Whether KM's method of calculating the fuel cost escalation and the extraordinary wear and tear on equipment provides a reasonable basis for compensating KM for the cost overrun attributable to the differing site condition?

27. Whether KM's "Rebid Estimate" in the amount of $2,068,300 is a reasonable assessment of the amount by which its dredging work Proposal to Defendant would have been increased if the bid documents had accurately presented the geotechnical information; and/or if the undisclosed documents had been made available to bidders prior to the Proposal?

28. Whether KM's $2,068,300 bid re-estimate is a reasonable measure of damages attributable to Defendant's misrepresentation and/or nondisclosure?

**C. Disputed Issues of Fact Respecting the Delay/Winter-over Claim.**

29. Whether KM planned to demobilize its mining and hauling equipment at the end of the 2004 construction season on the Nome Project; and whether it could and would have carried out that plan but for the extra mining and haul requirements that resulted from the overrun in rock quantities?

30. Whether the planned quantity of rock, as defined in the contract, had been produced by KM in sufficient time to remove the equipment on the barges departing from Nome prior to freeze-up in 2004?

31. Whether Defendant withheld information from KM regarding mining operations that called for changed work during 2004?

32. Whether performance of work in the Nome area other than the original Nome Project work motivated KM not to demobilize the mining and hauling equipment as had been planned?

33. Whether KM's claimed amount of $1,075, 854 is a reasonable evaluation of the damages KM incurred because this equipment was "captured" at the Nome Project site over the 2004-05 winter; and whether Defendant's allegation that KM benefitted from leaving the equipment at Nome is supported by sustainable, quantifiable evidence which warrants any reduction in that amount?

34. Whether KM's delay/winter-over damages, if any, are recoverable in the alternative: either as a distinct claim for $1,075,854 as stated; or alternatively, as an increase in the unit price for rock placed by KM in quantities exceeding by more than 15% Defendant's original estimated quantities (in accordance with the Variation in Estimated Quantities clause)?

**D. <u>Statement of Disputed Issues of Law</u>.**

35. Is the interpretation KM placed upon the rock unit price construction bid items (CLIN 0006 A22; CLIN 0013 B22, etc.) and the Peel back Causeway bid item (CLIN 0008), in the context of the contract as a whole, inclusive of the KM Technical Proposal per Defendant's Source Selection Evaluation Board approval, a reasonable one?

36. Is the interpretation Defendant placed upon the rock unit price construction bid items (CLIN 0006 A22; CLIN 0013 B22, etc.) and the Peel back Causeway bid item (CLIN 0008), in the context of the contract as a whole, a reasonable one to the exclusion of any other reasonable interpretation?

37. Is KM's interpretation by which it understands rock removed from the causeway pursuant to CLINs 0007 and 0008 is "Salvageable Items and Material" under TS 02220 3.2, 3.2.1 and 3.2.1.1, read in conjunction with the contract documents as a whole, a reasonable one?

38. Is Defendant correct in concluding that, interpreting the contract documents as a whole, ". . . the disposition of peel back rock is governed solely by Sheet H-3 Note 1 "Salvage All Causeway Rock and Reuse as Shown on Sheets H-5 and H-6" (COD Ex. #45, p. 14); and are there other reasonable interpretations which reach a different conclusion?

39. Whether Defendant is correct in contending that the KM Proposal, which was incorporated as part of the contract, establishes a cost estimate and schedule baseline for KM performance which must be used as a measure of any claimed schedule or cost impact; or whether the Proposal descriptions can be reconfigured to conform with the way the project actually was scheduled, and to conform with the means and methods actually utilized during construction of the Nome Project?

40. Whether Defendant should be estopped from asserting, as defenses to paying for rock quantities claimed by KM, interpretations of the contract that contradict the pre-bid communications from KM, to which Defendant did not respond, which reflected KM's understanding of the payment terms of the contract?

41. Whether Defendant breached the contract by its failure to make timely and adequate payments for work performed by KM?

**E. Disputed Issues of Law Respecting the Dredging Claim.**

42. Whether the interpretation KM placed upon the geotechnical data in the bid documents which describes the dredging conditions to be encountered was a reasonable one?

43. Whether the conditions encountered by KM during its dredging operation differed materially, within the meaning of the contract Differing Site Conditions clause, from what KM reasonably interpreted the bid documents to show and indicate?

44. Whether Defendant owed a duty to provide bidders with information in its possession which dealt with and described site conditions in the Nome Harbor area; and whether Defendant owed a duty to accurately present the geotechnical data which it did include within the bid documents.

Respectfully submitted this 20th day of May, 2008.

s/Herbert A. Viergutz
Herbert A. Viergutz
Attorney for Kiewit/Mason JV
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: 907-276-8010
Fax: 907-276-5334

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on May 20, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Herbert A. Viergutz
Herbert A. Viergutz