**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| KIEWIT/MANSON JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. 06-796 C<br>Judge Marian Blank Horn |

## SECOND AMENDED COMPLAINT

Plaintiff, Kiewit/Manson, JV (hereinafter "KM" or "Plaintiff"), for its Second Amended Complaint against the Defendant alleges as follows:

## I.

## JURISDICTION

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601, et seq.

2. On or before September 27, 2005, KM submitted a claim (hereinafter "Construction Related Claim"), duly certified in accordance with statutory and contract requirements, seeking additional compensation in the amount of $5,263,454.22. Final decision of the Contracting Officer denying the Construction Related Claim and advising KM of its right to bring action in this Court was delivered to KM on June 9, 2006.

3. On or before October 27, 2006, KM submitted a second claim (hereinafter the "Dredging Claim"), duly certified in accordance with statutory and contractual requirements, seeking additional compensation in the amount of $2,093,834. Final decision of the Contracting Officer denying the dredging claim and advising KM of its right to bring action

in this Court was delivered to KM on May 2, 2007.

## II.

## PARTIES

4. Plaintiff is a duly organized entity existing pursuant to the laws of the State of Alaska.

5. Defendant is the United States of America, acting through the Department of Army, U.S. Army Engineer District, Alaska (hereinafter "Defendant" or "Owner").

## III.

## FACTUAL BACKGROUND

6. On or about September 30, 2003, Defendant entered into Contract DACW 85-03-C-00014 with KM to construct a new main breakwater; a new spur breakwater; related dredging work; placement of erosion mattress rock; replacement of sheet pile retaining wall; demolition of concrete jetties; demolition and reconstruction of bridge abutment; and construction of a concrete girder bridge and bridge pier. The Contract amount was $36,800,877.00.

7. The Notice to Proceed was issued on November 4, 2003. The original contract completion date was established as April 29, 2007.

8. KM bid the project based upon a reasonable interpretation of the Owner's contract documents, which indicated the following: that the various elements of the work could be performed sequentially; that the spur breakwater, the causeway bridge and the main breakwater could be constructed during the 2004 construction season, such that the mining equipment could be demobilized prior to 2004 winter freezeup, and the dredging

portion of the work could be performed in the summer of 2005; and that the information included in the bid documents was complete and was accurately presented. KM's proposal was developed in reliance upon the Owner's bid documents, which served as a foundation for determining the necessary means and methods, and the time and the costs, needed to perform the anticipated work requirements.

9. KM proceeded with the work in pursuance of its intended job plan. As the work progressed, both the schedule and the plan for executing the work were altered to adjust for project conditions. KM repeatedly had to deal with design issues and conditions which developed during the work. Without limitations, these presented problems which included:

a. Substantial quantity overruns in the quantities of rock that were needed to accomplish the construction work, principally in the A22, B22 and A10 rock classifications.

b. Dredging conditions that were significantly more difficult than what was reasonably inferable or foreseeable from the information that was presented in the bid documents.

c. KM had to deal with various other problems on the project which are attributable to Defendant, among them nonpayment for work performed; and untimely response, partial response and lack of response to construction issues that resulted from inaccurate and incomplete information in the contract documents and insufficiencies in the design.

d. Unrealistic and unreasonable interpretation of the contract documents, resulting in extra and additional work beyond what was called for in the contract.

10. The consequence of the quantity overrun was exacerbated by the aforementioned problems caused by, and attributable to, Defendant. By early September, 2004, KM had stockpiled more than 115% of the contract estimated quantity of A22 rock. These huge-sized A22 stones were the "controlling" item in the KM quarry operation, meaning that other sizes of stone required for the project work became available as a by product of the A22 mining operation. It had become clear that a large amount of additional stone would be needed to complete the work. This meant KM had to abandon its plan to demobilize and barge out the heavy mining and hauling equipment. Accordingly, the barges that had been dispatched to transport the equipment back to KM's Vancouver, Washington yard were diverted away from Nome Harbor. KM ultimately had to rent and purchase replacement equipment to perform the 2005 work on other projects for which the Nome equipment had been earmarked. This resulted in extended duration, equipment standby and related costs for which Defendant is responsible.

11. Defendant was duly and timely notified regarding the quantity overruns. A faction within Defendant's Project Delivery Team took issue with Defendant's contracting and construction members of that team in respect to KM's payment applications for the installed rock. Ultimately Defendant refused to pay for the rock, and refused to deal at all with the quantities that were over the 115% Variation in Estimated Quantities clause baseline.

12. KM assembled the backup information documenting unpaid and compensable amounts. These were incorporated into a detailed, documented portfolio seeking equitable adjustment of the contract price. This was transmitted to the Owner as a Request for Equitable Adjustment under cover of SLC/SAO 088, dated August 5, 2005. Following

discussion between Defendant and KM representatives, KM's September 27, 2005 letter duly certified the August 5, 2005 submission as a claim in accordance with contract and statutory requirements. The Certification and the Construction-Related Claim document were attached and incorporated as Exhibit 1 to Plaintiff's Complaint. Quantity adjustment based upon final surveys taken since the claim was submitted have resulted in a reduction of the amount from the originally claimed figure of $5,263,454.22 to $5,063,439.

13. During performance of the dredging work requirements, KM encountered significant quantities of foreign material. These included: cobbles, boulders, rope, lumber, tires and metal debris in the inner harbor channel zone, the sand spit zone and the off shore zone of the New Entrance Channel. Except as "incidental" items, these foreign materials neither were shown nor indicated to exist in Defendant's contract documents in the areas where they were encountered. Neither were these foreign materials of the kind, frequency or type that ordinarily inhere in dredging work. Additionally, KM encountered hard, dense materials which were extremely difficult to dredge in areas where such materials were shown to exist below the depth of the dredging prism. The conditions resulted in a significant overrun of time and costs required to achieve the specified limits for the dredging work, and caused extraordinary wear and tear to the dredging equipment, which had to be repaired during the work and after the dredging had been completed.

14. Specifically with regard to the compensable cost overrun incurred in connection with the dredging work, KM assembled the backup information on unpaid amounts and submitted a detailed, documented certified claim on October 27, 2006, in accordance with contract and statutory requirements. The Dredging Claim document is attached and incorporated as Exhibit 1 to the First Amended Complaint. Adjustments which reflect the

DCAA audit and computation corrections have resulted in a reduction in the claimed amount from $2,093,834 to $1,824,298.

15. Unknown at the time the dredging work was bid were two factors which, had they been known, would have materially affected KM's assessment as to difficulty of the dredging conditions which would be encountered on this project. The first factor was misinformation presented in the bid documents. This consisted, most significantly of misstating the depth at which glacial till could be expected to be encountered, and misrepresenting the characteristics and density of the subsurface materials by misstating blow count data in the geotechnical report. The second factor was Defendant failing to disclose existence of three soils investigation and evaluation documents containing information and evaluations that, had they been made available to bidders prior to bid, would have more completely, accurately and realistically presented the potentially difficult dredging conditions to bidders. If the bid documents had accurately presented and fully disclosed this information, KM's bid for the dredging work on this project would have been higher by $2,068,300. KM has been damaged in that amount by reason of Defendant's affirmative misrepresentation and by the non-disclosure of its superior knowledge regarding dredging conditions at the project site.

## IV.

## FIRST CAUSE OF ACTION:

## THE CONSTRUCTION RELATED CLAIM

16. Upon this Second Amended Complaint and the incorporated Exhibit 1 Construction

Claim Document, KM asserts the following for its first cause of action:

a. Failure to make payment due under, and in accordance with, the contract. Among the various remedial clauses incorporated into the contract between the parties are the following:

- FAR 52.243-1 pertaining to changes in the work.
- FAR 52.243-4 pertaining to defective specifications.
- FAR 52.211-18 pertaining to variations in estimated quantities.

KM requested, and was entitled to receive, payment for work in accordance with all of these provisions. At the time work was being performed, through and including the final Decision of the Contracting Officer, Defendant has persisted in its refusal to make due and owing payment in accordance with the contract and KM pay applications; and has failed and refused to equitably adjust the contract price in compliance with these clauses.

b. The Owner breached its warranty that the plans and specifications it prepared for the project were complete, accurate and sufficient for construction requirements on the project; and further breached its warranty that its administration of the project would be such as to reasonably facilitate forward progress of KM's work as planned and scheduled.

## V.

## SECOND CAUSE OF ACTION:

## DREDGING DIFFERING SITE CONDITION CLAIM

17. Upon this Second Amended Complaint and the incorporated Exhibit 2 Dredging Claim document, KM asserts the following as the bases for its second cause of action:

a. KM is entitled to recover for its Dredging Claim under the contract, specifically pursuant to the Differing Site Conditions clause, in that the foreign materials encountered differed materially from those indicated in the contract, and in addition, were unknown physical conditions of an unusual nature which differed materially from those ordinarily encountered in the type of work required by the contract.

b. KM is entitled to recover for its Dredging Claim on the basis of breach of contract, specifically breach of the Owner's implied warranty that the contract documents pertinent to the dredging were accurate and sufficient for their intended purpose.

**VI.**

**THIRD CAUSE OF ACTION:**

**DREDGING CLAIM BASED UPON AFFIRMATIVE**

**MISREPRESENTATION AND/OR NON-DISCLOSURE**

18. Upon this Second Amended Complaint, KM asserts the following for its third cause of action:

a. Affirmative misrepresentation by reason of Defendant presenting misinformation in the bid documents for the project, including, without limitation, misstating the depth at which glacial till could be expected to be

encountered; and misrepresenting the characteristics and density of the subsurface materials by misstating the blow count information in the geotechnical data.

b, Non-disclosure of Defendant's superior knowledge as to conditions in the area to be dredged by reason of Defendant failing to disclose three documents containing information and evaluations that, if it had been made available to bidders prior to bid, would have more completely, accurately, and realistically presented the potentially difficult dredging conditions to bidders.

WHEREFORE, PLAINTIFF PRAYS:

1. For Judgment against the Defendant in the amount of $5,063,439 on the First Cause of Action, the Construction related claim, together with such additional sums as are established by the evidence at trial, including, without limitation, repricing of quantities that exceed 115% of Defendant's estimated quantities, in consonance with FAR 52.211-18 the Variation in Estimated Quantities Clause, together with the Disputes Act interest from the date of Claim certification..

2. For judgment against Defendant in the amount of $1,824,298 on the Dredging Differing Site Condition Claim; or alternatively, for a judgment against Defendant in the amount of $2,068,300 on the Dredging Affirmative Misrepresentation and/or Non-disclosure third cause of action, together with such additional sums as are established by the evidence at trial and Disputes Act interest from the date of Claim certification.

3. That KM be awarded such other and additional relief as the Court deems proper.

Respectfully submitted this 20th day of May, 2008.

s/Herbert A. Viergutz

Herbert A. Viergutz
Attorney for Kiewit/Mason JV
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: 907-276-8010
Fax: 907-276-5334

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on May 20, 2008, a copy of the foregoing "Second Amended Complaint" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Herbert A. Viergutz
Herbert A. Viergutz