**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| KIEWIT/MANSON JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. 06-796 C |

**SECOND AMENDED SECOND AMENDED COMPLAINT**

Plaintiff, Kiewit/Manson, JV (hereinafter "KM" or "Plaintiff"), for its Second Amended Second Amended Complaint against the Defendant alleges as follows:

**I.**

**JURISDICTION**

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601, et seq.

2. On or before September 27, 2005, KM submitted a claim (hereinafter "Construction Related Claim"), duly certified in accordance with statutory and contract requirements, seeking additional compensation in the amount of $5,263,454.22. Final decision of the Contracting Officer denying the Construction Related Claim and advising KM of its right to bring action in this Court was delivered to KM on June 9, 2006.

3. On or before October 27, 2006, KM submitted a second claim (hereinafter the "Dredging Claim"), duly certified in accordance with statutory and contractual requirements, seeking additional compensation in the amount of $2,093,834. Final decision of the Contracting Officer denying the dredging claim and advising KM of its right to bring action

in this Court was delivered to KM on May 2, 2007.

## II.

## PARTIES

4. Plaintiff is a duly organized entity existing pursuant to the laws of the State of Alaska.

5. Defendant is the United States of America, acting through the Department of Army, U.S. Army Engineer District, Alaska (hereinafter "Defendant" or "Owner").

## III.

## FACTUAL BACKGROUND

6. On or about September 30, 2003, Defendant entered into Contract DACW 85-03-C-00014 with KM to construct a new main breakwater; a new spur breakwater; related dredging work; placement of erosion mattress rock; replacement of sheet pile retaining wall; demolition of concrete jetties; demolition and reconstruction of bridge abutment; and construction of a concrete girder bridge and bridge pier. The Contract amount was $36,800,877.00.

7. The Notice to Proceed was issued on November 4, 2003. The original contract completion date was established as April 29, 2007.

8. KM bid the project based upon a reasonable interpretation of the Owner's contract documents, which indicated the following: that the various elements of the work could be performed sequentially; that the spur breakwater, the causeway bridge and the main breakwater could be constructed during the 2004 construction season, such that the mining equipment could be demobilized prior to 2004 winter freezeup, and the dredging

portion of the work could be performed in the summer of 2005. KM's proposal was developed in reliance upon the Owner's bid documents, which served as a foundation for determining the necessary means and methods, and the time and the costs, needed to perform the anticipated work requirements.

9. KM proceeded with the work in pursuance of its intended job plan developed during the bid phase. As the work progressed, both the schedule and the plan for executing the work had to be substantially altered. KM repeatedly had to deal with ongoing changes, conditions and interferences which were the fault and responsibility of the Owner. Without limitation, these included:

a. Substantial quantity overruns, notably in the A22, B22 and A10 rock classifications.

b. Nonpayment for work performed.

c. Requirements for extra and additional work beyond and differing from those that originally had been set forth in the contract, and nonpayment for such work after KM had performed the actually and constructively changed requirements.

d. Unrealistic and unreasonable interpretation of the contract documents, resulting in extra and additional work beyond what was called for in the contract.

e. Maladministration of the contract at the project site. This took the form, among other things, of slow response to requests for information, and frequent impediments to forward progress of the work; and, in addition, was

manifested in a penchant by the administrators for untimely second-guessing of the manner in which various work items had been performed.

10. Collectively, these conditions and interferences resulted in delay to construction work on the project such that KM had to winter-over, and perform construction work during at least one extra season. This resulted in extended duration, equipment standby and related costs for which the Owner is responsible.

11. During performance of the dredging work requirements, KM encountered significant quantities of foreign material including cobbles, boulders, rope, lumber, tires and metal debris in the inner harbor channel zone, the sand spit zone and the off shore zone of the New Entrance Channel. Except "incidentally", these foreign materials were neither shown nor indicated to exist in the Owner's contract documents in the areas where they were encountered. Neither were these foreign materials of the kind, frequency or type that ordinarily inhere in dredging work. This resulted in a significant overrun of time and costs required to achieve the specified limits for the dredging work.

12. Exclusive of the compensable extra and additional costs incurred with the dredging activity, KM assembled the backup information and unpaid amounts and incorporated them into a detailed, documented portfolio seeking equitable adjustment of the contract price, which was transmitted to the Owner under cover of SLC/SAO 088 dated August 5, 2005. Following discussion between Owner and KM representatives, KM's September 27, 2005 letter duly certified the August 5, 2005 submission as a claim in accordance with contract and statutory requirements. The certification and the Construction Related Claim document were attached and incorporated as Exhibit 1 to Plaintiff's Complaint.

13. Specifically with regard to the extra work and additional costs incurred in connection with the dredging activity, KM assembled the backup information on unpaid amounts and submitted a detailed, documented certified claim on October 27, 2006, in accordance with contract and statutory requirements. The Dredging Claim document is attached and incorporated as Exhibit 1 to this First Amended Complaint.

14. Unknown at the time the dredging work was bid were two factors which, had they been known, would have materially affected KM's assessment as to difficulty of the dredging conditions which would be encountered on this project. The first factor was misinformation presented in the bid documents. This consisted, most significantly of misstating the depth at which glacial till could be expected to be encountered, and misrepresenting the characteristics and density of the subsurface materials by misstating blow count data in the geotechnical report. The second factor was Defendant failing to disclose existence of three soils investigation and evaluation documents containing information and evaluations that, had they been made available to bidders prior to bid, would have more completely, accurately and realistically presented the potentially difficult dredging conditions to bidders. If the bid documents had accurately presented and fully disclosed this information, KM's bid for the dredging work on this project would have been higher by $2,068,300. KM has been damaged in that amount by reason of Defendant's affirmative misrepresentation and by the nondisclosure of its superior knowledge regarding dredging conditions at the project site.

## IV.

## FIRST CAUSE OF ACTION

15. Upon this Second Amended Second Amended Complaint and the incorporated Exhibit 1 Construction Claim Document, KM asserts the following as the basis for its first cause of action:

a. Failure to make payment due under, and in accordance with, the contract. Among the various remedial clauses incorporated into the contract between the parties are the following:

- FAR 52.243-1 pertaining to changes in the work.
- FAR 52.243-4 pertaining to defective specifications.
- FAR 52.211-18 pertaining to variations in estimated quantities.

KM requested, and was entitled to receive, payment for work in accordance with all of these provisions. At the time work was being performed, through and including the final Decision of the Contract Officer, the Owner has persisted in its refusal to equitably adjust the contract price in compliance with these clauses.

b. The Owner breached its warranty that the plans and specifications it prepared for the project were correct, adequate and feasible.

c. The Owner breached its warranty that its administration of the project would be such as to reasonably facilitate forward progress of KM's work as planned and scheduled; instead, by its actions and failure to act, it directly and

indirectly interfered with the work, causing compensable delay and extra costs.

V.

SECOND CAUSE OF ACTION

16. Upon this Second Amended Second Amended Complaint and the attached Exhibit 1 Dredging Claim document, KM asserts the following as the basis for its second cause of action:

a. KM is entitled to recover for its Dredging Claim under the contract, specifically pursuant to the differing sites conditions clause, in that the foreign materials encountered differed materially from those indicated in the contracts, and in addition, were unknown physical conditions of an unusual nature which differed materially from those ordinarily encountered in the type of work required by the contract.

b. KM is entitled to recover for its Dredging Claim for breach of contract, specifically breach of the Owner's implied warranty that the contract documents pertinent to the dredging were accurate and sufficient for their intended purpose.

VI.

THIRD CAUSE OF ACTION

17. Upon this Second Amended Second Amended Complaint and the attached Exhibit 1, Dredging Claim document, KM asserts the following as the basis for its second cause

of action:

a. Affirmative misrepresentation by reason of Defendant presenting misinformation in the bid documents for the project, including, without limitation, misstating the depth at which glacial till could be expected to be encountered; and misrepresenting the characteristics and density of the subsurface materials by misstating the blow count information in the geotechnical data.

b. Nondisclosure of Defendant's superior knowledge as to conditions in the area to be dredged by reason of Defendant failing to disclose three documents containing information and evaluations that, if it had been made available to bidders prior to bid, would have more completely, accurately, and realistically presented the potentially difficult dredging conditions to bidders.

WHEREFORE, PLAINTIFF PRAYS:

1. For Judgment against the Defendant in the amount of $5,263,454,22 on the Construction Claim, together with such additional sums as are established by the evidence at trial.

2. For judgment against Defendant in the amount of $2,093,834 on the Dredging Claim, together with such additional sums as are established by the evidence at trial, or alternatively, $2,093,834 on the Dredging affirmative misrepresentation and/or non-disclosure claim.

3. That KM be awarded such other and additional relief as the Court deems proper.

Respectfully submitted this 21st day of May, 2008.

s/Herbert A. Viergutz
Herbert A. Viergutz
Attorney for Kiewit/Mason JV
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: 907-276-8010
Fax: 907-276-5334

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 21st day of May, 2008, a copy of the foregoing "Second Amended Second Amended Complaint" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Herbert A. Viergutz
Herbert A. Viergutz